Marion J. AUSFELDT, Plaintiff,

v.

Marvin T. RUNYON, as Postmaster General of the United States Postal Service Agency; George Coffey, Defendants.

No. 96–CV–0314 (LEK/RWS).

United States District Court, N.D. New York.

Jan. 2, 1997.

**480**

Delorenzo, Gordon Law Firm (Thomas E. Delorenzo, of counsel), Schenectady, NY, for Plaintiff.

Marvin T. Runyon and George Coffey, U.S. Postal Service, Law Department of Windsor Field (Anne M. Gallaudet, of counsel), Windsor, CT, for Defendants.

### MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

This is an action for employment discrimination brought under 42 U.S.C. § 2000e more commonly known as Title VII. Plaintiff Marion J. Ausfeldt ("Ausfeldt") alleges discrimination on the part of her employer, Marvin T. Runyon ("Runyon"), Postmaster General of the United States Postal Service ("Postal Service") and her immediate supervisor, George Coffey ("Coffey"). Plaintiff alleges hostile environment sexual harassment and failure to promote based on retaliation. Plaintiff seeks Two–Million Five–Hundred thousand dollars in compensatory damages, One–Million Five–Hundred thousand dollars in front pay, back pay, and benefits, and Two–Million Five–Hundred thousand dollars in punitive damages as well as attorneys fees and costs.

Presently before the Court is the defendant's motion to dismiss or, in the alternative, for summary judgment. Also before the Court is defendant's motion to strike the portions of the complaint involving punitive damages and front pay. Oral arguments on this matter were heard on October 4, 1996 in Albany, New York.

### I. FACTS

Ausfeldt became an employee of the United States Postal Service ("Postal Service") in 1980 and began working in the Schenectady Post Office in 1981. In 1987, plaintiff received training on Equal Employment Opportunity ("EEO") procedures and policies. In May of 1992, defendant Coffey became the plaintiff's immediate supervisor in the Schenectady Post Office.

Ausfeldt alleges that when Coffey became her supervisor, she was forced to endure repeated sexual harassment and sex discrimination which continues to the present. Specifically, Ausfeldt contends that Coffey would comment on her clothing in a sexually offensive manner, particularly when she was bending over the mail slots in the office. Ausfeldt also alleges that Coffey would ask highly personal questions about her marital relationship, compared her to a television actress whom he considered a "hot item," would make comments regarding the breast size of other female postal employees in her presence, and would make physical contact with her including placing his hands on her back and pressing his body against hers. Ausfeldt further submits that after declining a lateral position change that Coffey had requested she take, he became more hostile and used sexually explicit language and screamed at her.

In the Spring of 1994, Ausfeldt voiced her concerns regarding Coffey's behavior to Lisa Lynch, the Employee Assistance Program Coordinator for the Albany District. However, Ausfeldt did not contact an EEO Counselor/Investigator ("Counselor") at that time. In December of 1994, after an alleged altercation with Coffey, Ausfeldt contends that she confided in Mark Vrooman ("Vrooman"), the Senior EEO Complaints Processing Specialist in Albany, New York. At that meeting, Ausfeldt submits that she asked specific questions about the definition of sexual harassment and explained the alleged acts of

Coffey. Vrooman allegedly informed her that these events did constitute sexual harassment and that he would attempt to resolve the problems informally through mediation. Plaintiff submits that she never heard anything further from Vrooman and contends that she was not informed that she could file a formal written complaint with the EEOC.

Ausfeldt engaged in temporary assignments known as details within the Post Office which entailed working at different locations. In July 1994, Ausfeldt had a detail in the Albany District Office. She returned to the Schenectady Office in February of 1995 and stayed there through June.

In April of 1995, Ausfeldt wrote the Manager of Human Resources, Albany District, asking to be considered noncompetitively for any lateral transfers or a change to a lower paying position outside of the Schenectady Office. Defendant Runyon asserts that there were no positions available to which Ausfeldt could laterally transfer and the only available position at a lower level was filled competitively. Ausfeldt was not chosen for that position.

In June 1995, Ausfeldt met with Maryrose Behan ("Behan"), the Senior Personnel Services Specialist, regarding promotions and transfers and to discuss the alleged harassment by Coffey. Ausfeldt did not apply for any promotions and did not pursue the formal avenue of contacting an EEO Counselor at that time.

It is undisputed that on October 5, 1995, Ausfeldt initiated formal contact with an EEO Counselor. Plaintiff alleged that the Schenectady Post Office was a sexually hostile and abusive work environment. On November 13, 1995, Ausfeldt filed a formal written administrative complaint.

As a result of this complaint, the Postal Service began an EEO investigation. After conducting an investigation, defendant Runyon concluded that Ausfeldt had not complained of any actions by Coffey that fell during the 45-day contact period between August 21, 1995 and October 5, 1995 and that Ausfeldt had not been denied any promotion or transfer opportunities during the same

period of time. On December 2, 1995, the Postal Service issued a final decision denying the administrative complaint on the grounds that Ausfeldt failed to timely initiate contact with an EEO Counselor. The present action was commenced on February 21, 1996.

From January 1996 to June of the same year, Ausfeldt was on detail in the West Sand Lake Post Office. Plaintiff contends that despite the fact that she was not physically present at the Schenectady Post Office, she still had contact with Coffey both directly and indirectly. Ausfeldt was scheduled to return to the Schenectady Post Office on July 15, 1996.

## II. DISCUSSION

### A. Summary Judgment Standard

Since the Court relied upon matters outside the pleadings in reaching the conclusions set forth, this motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(c). Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586,

106 S.Ct. at 1356. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–249, 106 S.Ct. at 2510–11; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### 1. Hostile Environment Sexual Harassment Claim

The Supreme Court described a hostile work environment as a workplace "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)). "Isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with regularity that can reasonably be termed pervasive." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1306 n. 5 (2d Cir.1995).

A 'hostile work environment' theory requires that the plaintiff prove not only actionable sex discrimination, but also that the "supervisor's actions should be imputed to the employer." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992). With regard to the first prong of this test, the Second Circuit has explained that a review of the totality of the circumstances determines discrimination's existence. *See Snell v. Suffolk County,* 782 F.2d

1094, 1103 (2d Cir.1986). A plaintiff must satisfy several elements.

First, a plaintiff must establish that the "harassment occurred with respect to 'terms, conditions, or privileges' of employment, 42 U.S.C. § 2000e–2(a)(1), though she need not show that she lost any tangible job benefits as a result thereof." *Kotcher,* 957 F.2d at 62; 2. Second, the plaintiff must establish the offensiveness and pervasiveness of the defendant's conduct. *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir.1989); *Kotcher,* 957 F.2d at 62 ("The harassment at issue must be 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.' [*Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405]"). Third, the plaintiff must establish the repetition and continuousness of the harassing incidents. *Kotcher,* 957 F.2d at 62 ("isolated acts or occasional episodes will not merit relief"); *see also Carrero,* 890 F.2d at 577. Finally, the plaintiff must establish that the conduct was unwelcome. *Vinson,* 477 U.S. at 68, 106 S.Ct. at 2406.

These elements, once established, combine to show an abusive work environment. In order to impute the offensive conduct to the employer, the employer must have "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher,* 957 F.2d at 63; *see also Snell,* 782 F.2d at 1104.[1] Yet, "lack of notice and the existence of complaint procedures do not automatically insulate an employer from liability." *Karibian v. Columbia University,* 14 F.3d 773, 779 (2d Cir.1994). "At some point ... the actions of a supervisor at a sufficiently high level in the hierarchy would necessarily be imputed to the company." *Kotcher,* 957 F.2d at 64. A harasser's supervisory status over the harassed increases the likelihood of employer liability. *Id.* The Second Circuit noted that:

> [I]f a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses 'his actual or apparent authority to further the harassment, or if the

---

1. Beyond the guidance of the Second Circuit, the Supreme Court has directed that courts should look to basic agency principles in determining liability of the employer. *See Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405–06.

supervisor was otherwise aided in accomplishing the harassment by the existence of the agency relationship.' *Karibian*, 14 F.3d at 780. By contrast, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless [the two part *Kotcher* test is satisfied]. *Kotcher*, 957 F.2d at 63.

*Tomka*, 66 F.3d at 1305.

Thus, "an employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." *Karibian*, 14 F.3d at 780.[2]

### a. *Timeliness of Complaint*

The EEO regulations provide that aggrieved persons who feel they have been discriminated against must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory...." 29 C.F.R. § 1614.105(a)(1). "At the initial counseling session, Counselors must advise individuals of their rights and responsibilities...." 29 C.F.R. § 1614.105(b). The regulations further provide that "the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person brought the matter to the Counselor's attention...." 29 C.F.R. § 1614.105(d).

■ Defendants assert that pursuant to the Equal Employment Opportunity Commission ("EEOC") regulations, Ausfeldt can only assert claims regarding events that occurred within the forty-five day period prior to her official contact with an EEO Counselor. Because Ausfeldt contacted a Counselor on October 5, 1995, defendant contends that her claims are limited to events which oc-

curred between that date and August 21, 1995.

Plaintiff asserts that initial contact with an EEO counselor, Mark Vrooman, was made on December 8, 1994, directly after an alleged incident between her and Coffey on December 2, 1994. Ausfeldt contends that she discussed her situation and informed Vrooman of the specific circumstances of her employment, and that he informed her that she did indeed have a sexual harassment claim. Plaintiff asserts that it was her belief that her contact with Vrooman satisfied the EEO's initial contact requirement. Defendants contend that although this meeting occurred, it does not rise to the level of satisfying an initial contact because Ausfeldt made it clear to Vrooman that she did not wish to pursue her claim at that time. It is defendants' contention that Ausfeldt's meeting with Vrooman was merely a fact-finding mission and nothing more.

The Court finds that the defendants have failed to carry their burden of showing that there is an absence of a genuine issue of material fact in this matter. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Despite defendants' contention to the contrary, whether or not the December 8, 1994 meeting constitutes an "initial contact" with an EEO Counselor is not resolved in the submissions and is a question only a jury can decide. If the Court were to look at the facts, inferences therefrom, and ambiguities in a light most favorable to the nonmovant, *Matsushita* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), the Court would have to conclude that this meeting did in fact constitute initial contact with an EEO Counselor. Viewing it in that light, Ausfeldt's claim is quite viable. Thus, summary judgment on this issue is inappropriate.

### 2. *Retaliation and Failure to Promote Claim Standard*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, states in pertinent part:

---

2. The court noted that "where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, the situation will generally be indistinguishable from cases in which the harassment is perpetrated by the plaintiff's co-workers; consequently, the *Kotcher* standard of employer liability will generally apply, and the employer will not be liable unless 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Karibian*, 14 F.3d at 780 (quoting *Kotcher*, 957 F.2d at 63.)

(a) it shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...

The purpose of Title VII is to "eliminate[ ] certain bases for distinguishing among employees while otherwise preserving employers' freedom of choice." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 239, 109 S.Ct. 1775, 1784–85, 104 L.Ed.2d 268 (1989). Recognizing the difficulty of proving discrimination—a claim based on the employer's state of mind—while simultaneously preserving employer prerogatives, the Supreme Court has developed two analytical frameworks which allocate the burden of proof so as to balance these interests. Generally, there are two types of retaliation claims; the first involves a claim that includes indirect evidence of unlawful retaliation, and the second involves direct evidence of retaliation. The present case involves a claim of indirect evidence of retaliation.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court developed the framework for proving intentional retaliation in the absence of direct evidence. In order for a Title VII plaintiff to establish a claim through indirect evidence, a prima facie case of retaliation must be proved by a fair preponderance of the evidence. *Burdine,* 450 U.S. at 252–253, 101 S.Ct. at 1093–94; *see also Price Waterhouse,* 490 U.S. at 271, 109 S.Ct. at 1801–02 (O'Connor, J., concurring) ("the entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."). In a "pretext" case for failure to promote, a plaintiff must show four essential elements.

In order to establish the prima facie case, plaintiff must demonstrate that: (i) [s]he is a member of a protected class; (ii) [s]he was qualified for the position; (iii) [s]he was subjected to an adverse employment decision; and (iv) either the position remained open or [s]he was replaced by someone not a member of [her] protected class.

*de la Cruz v. New York City Human Resources Admin. Dept. of Social Servs.,* 82 F.3d 16, 20 (2d Cir.1996) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408–09 (2d Cir.), cert. denied, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Sweeney v. Research Found. of State Univ. of New York,* 711 F.2d 1179, 1184–85 (2d Cir.1983)).

Establishment of a prima facie case, however, merely raises an inference of discrimination, and "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Once the plaintiff has proven a prima facie case of discrimination, the burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.*

Once the defendant offers this type of evidence, the *McDonnell/Burdine* presumption drops from the case. *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The plaintiff must then persuade the Court that the defendant's proffered reasons were merely a pretext, *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, and therefore, that she was the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### a. *Exhaustion of Remedies, Timeliness, or Absence of Adverse Employment Action*

Defendants assert that plaintiff's second cause of action for retaliation and failure to promote should be dismissed because they are beyond the scope of the EEO investigation that could have been conducted based upon the allegations raised in the administrative process. Defendants further submit

that during the time in question, according to them the year 1995, plaintiff suffered no adverse employment action. Finally, defendants contend that even if the plaintiff could show that the failure to promote claim is within the scope of the EEO investigation and she did suffer an adverse employment action, the claim is time barred. Plaintiff responds by arguing that the failure to promote claim is in fact reasonably related to the EEO complaint and the defendants were therefore on notice.

After carefully considering the Ausfeldt affidavit and other relevant submissions, it appears that the plaintiff never applied for a promotion. However, Ausfeldt did request to be removed from what she felt was a sexually abusive environment and was even willing to take a down grade in salary or a lateral move to accomplish her aim. In April of 1995, Ausfeldt wrote to Behan, the Manager of Human Resources in the Albany District, requesting that she be considered noncompetitively for any "EAS" positions with a change to a lower level of pay or a lateral reassignment. On July 18, 1995, Ausfeldt officially applied for a competitive EAS level–15 HRS position which would have been a downgrade from her EAS level–17–position. On August 7, 1995, Behan orally informed Ausfeldt that she had not been chosen for that job.

Defendant argues, and the Court agrees, that this single episode is the only claim for retaliation that plaintiff can establish and is the only reference to any kind of retaliation both prior to this incident and afterwards. Since this incident occurred long after the alleged December 1994 contact with Vrooman, it was not discussed at that meeting. Importantly, when the plaintiff did file a formal EEO complaint on October 5, 1995, there was no specific mention of retaliation or failure to promote.

### (i) Exhaustion of Administrative Remedies

■ Defendants' first argument against the retaliation claim is that plaintiff failed to exhaust her administrative remedies. Specifically, defendants assert that the retaliation claim is not within the " 'scope of the EEOC investigation which [ ] [could have]

reasonably be[en] expected to grow out of the charge of discrimination.' " *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979) *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)) (quoting *Smith v. American President Lines*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). Plaintiff responds by asserting that the Court has jurisdiction to hear all claims that are reasonably related to the plaintiff's EEOC complaint.

Generally, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993) (citing *Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir.1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980)). "This exhaustion requirement is an essential element of Title VII's statutory scheme." *Id.*

The Second Circuit has set forth "three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Id* at 1402. Of the three exceptions, only one applies to the facts of this case.

The Second Circuit recognizes that employees often fill out EEOC charges without the benefit of counsel. As a result, the one applicable exception to the facts of this case is essentially an allowance of "loose pleading." *Id.* Thus, the Second Circuit has allowed claims to survive even when not specifically included in an EEOC charge when "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Id.* (citing *Smith*, 571 F.2d at 107 n. 10 (2d Cir.1978)); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir.1992); *Silver*, 602 F.2d at 1090 (2d Cir. 1979).

In determining whether the claim of retaliation would reasonably have flowed from the EEOC investigation of sexual harassment, the Court must look to the allegations set forth in the formal charge. *Gomes*, 964 F.2d at 1334. It is undisputed that Ausfeldt did not check off the "retaliation" box in her informal complaint filed on November 16, 1995. However, this by itself is certainly not conclusive. For the following reasons, the Court is satisfied that the EEOC had enough notice of alleged retaliation that its investigation should have included these assertions.

First, the Court notes that in the handwritten complaint filed by Ausfeldt on November 13, 1995, the plaintiff clearly states that she is suffering from a hostile and abusive work environment, not simply sexual harassment. Second, in the typewritten letter attached to the complaint, Ausfeldt is very precise as to the bases of both her sexual harassment and her hostile and abusive work environment allegations. Specifically, Ausfeldt recounts that her superior was making sexual jokes, sexual comments, touching her, staring at her, and asking personal questions of her. Most important is Ausfeldt's description of what she describes as her hostile and abusive work environment. Ausfeldt writes:

> The conditions of the hostile and abusive work environment include, but are not limited to, *false charges based on hearsay*, intimidation, segregating me from my office and my office from other administrative offices, my superior's encouragement of another manager to also verbally abuse me and use abusive language, and an unfounded insubordination charge due to my denial to [sic] a meeting with my superior behind closed doors alone. (emphasis added).

This language suggests more than mere sexual harassment. Rather, it suggests that the plaintiff was being retaliated against and it supports Ausfeldt's contention that when she contacted an EEO Counselor in December of 1994 regarding Coffey's actions, Coffey became aware of that contact. Ausfeldt further states:

> I was afraid to express my discomfort to George Coffey since he is my superior and

I believed that to do otherwise would risk my career or would result in retaliations. George Coffey threatened my career and advancement. This hostile and abusive work environment has precipitated my need to apply for other assignments as well as applying for changes to a lower level.

Thus, the EEOC was aware that Ausfeldt alleged that Coffey threatened her career advancement and that she had applied for other positions including those which would result in a drop in her salary. These facts are supported in the EEO Counselor's notes which state that Ausfeldt did not want to return to the Schenectady Post Office. Thus, the Court concludes that there was a enough information before the EEOC so that the scope of their investigation should have included allegations of retaliation.

### (ii) Absence of Adverse Employment Action

Defendants' second argument against the retaliation claim is that no adverse employment action occurred. This argument is easily dismissed since Ausfeldt was not chosen for a position for which she applied. In addition, the Court notes that this position was a step down in salary which supports the plaintiff's contention that she was in fact the victim of retaliation.

### (iii) Timeliness

Defendants' third argument against the retaliation claim is that plaintiff failed to timely file her claim with an EEO Counselor. Defendants contends that since Ausfeldt was made aware that she was not chosen for the level–15 position on August 7, 1995, she had 45 days from that allegedly retaliatory action to initiate contact with an EEO Counselor. The Court finds this assertion to be without merit.

As discussed in the prior section, viewing the facts in the light most favorable to the non-moving party, the Court must assume the initial contact with an EEO Counselor occurred on December 8, 1994. Assuming that to be true, the employment action complained of by the plaintiff would have to be considered part of an on-going pattern of

discrimination of which the plaintiff had already complained. Thus, the argument that the plaintiff's retaliation claim is untimely must fail on this motion for summary judgment.

### B. *Punitive Damages*

 Pursuant to Fed.R.Civ.P. 12(f), defendants have moved to strike the portion of the complaint that requests punitive damages. Defendants contend that punitive damages are not allowed against a governmental agency such as the Postal Service, nor against the head of the agency sued in his or her official capacity. Plaintiff submits that the Postal Service is in fact open to punitive damages because it has the power to sue and be sued.

Citing *Loeffler v. Frank,* plaintiff concedes that under the doctrine of sovereign immunity, agencies of the federal government are ordinarily immune from punitive damages claims. 486 U.S. 549, 554, 108 S.Ct. 1965, 1968–69, 100 L.Ed.2d 549 (1988). The Court notes that under § 1981a,

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (emphasis added). Plaintiff contends, however, that the Federal government has waived this right for Federal entities such as the Postal Service which engage in commercial transactions with the public and which may sue and be sued. Plaintiff submits, therefore, that the Postal Service is open to punitive damages in Title VII actions. *See Baker v. Runyon,* 922 F.Supp. 1296 (N.D.Ill.1996).

The Court notes that District Courts around the country have been reaching different conclusions on this very issue. *See Baker,* 922 F.Supp. at 1299 (the Postal Service is not a governmental agency immune from punitive damage claims); *Lussier v. Runyon,* 1993 WL 434078 (D.Me.1993) (puni-

tive damages available against Postal Service under the Rehabilitation Act); *but see Miller v. Runyon,* 932 F.Supp. 276, 277 (M.D.Al. 1996) (the Postal Service is a governmental agency for the purposes of the Civil Rights Act of 1991); *Suhr v. Runyon,* 1995 WL 617478, *3 (N.D.Ill.1995) (suit against the Postal Service is "in essence a suit against a federal agency [and] plaintiff is barred from recovering punitive damages from defendant"); *Montalvo v. United States Postal Service,* 887 F.Supp. 63, 66 (E.D.N.Y.1995) (summary judgment granted after plaintiff conceded punitive damages are not available against the federal government).

After a careful review, the Court concludes that this precise issue has not been addressed by the Second Circuit. However, the Second Circuit has addressed the sovereign immunity of the Postal Service in the context of whether it is subject to a jury trial in *Young v. United States Postal Service,* 869 F.2d 158, 159 (2d Cir.1989).

In *Young,* the petitioner argued that the Supreme Court holding in *Loeffler,* which waived the Postal Service's sovereign immunity, also encompasses "all normal incidents of suit, including the right to a jury trial." 869 F.2d at 159. While observing that the "sue and be sued" clauses in federal statutes are broad waivers of immunity and have exposed the federal government to liability for prejudgment interest, costs, and garnishment and attachment proceedings, the court noted that "the waiver of sovereign immunity does not, by itself, grant a right to a trial by jury in an action against the federal government." *Id.* (citing *Loeffler,* 486 U.S. 549, 108 S.Ct. at 1966; *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941) and *Federal Housing Admin. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940)).

In concluding that Congress would have had to "affirmatively and unambiguously" grant the right to a jury trial, the Second Circuit further found that:

> Through the "sue and be sued" clause in the Postal Reorganization Act congress effectively waived sovereign immunity for the postal service, but the waiver does not

change the fact that *the party being sued is still the federal government.* The postal service is an 'independent establishment of the executive branch of the Government of the United States'.

*Id.* (emphasis added) (citing 39 U.S.C. § 201).

As discussed earlier, punitive damages are not available in civil rights suits against the government. 42 U.S.C. § 1981a(b)(1). Further, the Second Circuit has determined that a suit against the Postal Service is a suit against the Federal government. *Young,* 869 F.2d at 159. Therefore, Second Circuit precedent impels the finding that the Postal Service is in fact immune from punitive damages. Accordingly, the Court holds that the motion to strike the request for punitive damages must be granted.

### C. *Front Pay*

 Pursuant to Fed.R.Civ.P. 12(f), defendants have moved to strike the portion of the complaint that requests a reward of "front pay," also known as prospective wages. Defendants assert that front pay is only appropriate when an employee has been terminated and reinstatement is inappropriate. Defendants contend that since Ausfeldt is still employed by the Postal Service, front pay is inappropriate. Plaintiff argues that because she was denied promotions due to discriminatory conduct, front pay is appropriate here to place her in the position she would have held absent the discrimination.

It appears that the plaintiff misconstrues the purpose of front pay. The Second Circuit notes that:

"Front pay is awarded in the sound discretion of the district court," *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), where reinstatement is inappropriate and the plaintiff has been *unable to find another job,* in order to " 'mak[e] victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.' "

*Reed v. A.W. Lawrence & Co., Inc.* 95 F.3d 1170, 1182 (2d Cir.1996) (emphasis added) (quoting *Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125–26 (2d Cir.1996) (quoting *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 729 (2d Cir.1984))).

In requesting front pay, the plaintiff wishes to insure that if successful, she will receive the compensation she would have received had she obtained the promotions she asserts she was due. This remedy is already encompassed in the request for compensatory damages and back pay. For these reasons, the defendant's motion to strike the request for front pay must be granted.

### D. *Coffey as an Improper Defendant*

 Defendant Coffey has been sued in this action in both his individual and official capacities. Pursuant to Fed.R.Civ.P. 12(b)(6), defendants have moved to dismiss the action as against Coffey on the grounds that the plaintiff has failed to state a cause of action for which relief can be granted. Defendants contend that Coffey is not a proper party defendant in this action because in a Title VII action against an agency, the only proper defendant is the agency head, in this case, Runyon. Plaintiff does not address this argument in their responsive papers.

Title VII provides that in civil actions by a governmental employee against a governmental agency, the proper defendant shall be the "head of the department, agency, or unit." 42 U.S.C. § 2000e–16(c). It is undisputed that Runyon, as the Postmaster General, is the head of the United States Postal Service. Furthermore, the Second Circuit has found that "an employer's agent may not be held individually liable under Title VII." *Tomka,* 66 F.3d at 1317. Thus, the defendants' motion to dismiss Coffey as a party defendant must be granted.

Accordingly, it is ORDERED that:

1. Defendant's motion for summary judgment on the first cause of action involving hostile environment sexual harassment is DENIED;

2. Defendant's motion for summary judgment on the second cause of action involving

retaliation and failure to promote is DENIED;

3. Defendant's motion to strike the request for punitive damages is GRANTED;

4. Defendant's motion to strike the request for front pay is GRANTED;

5. Defendant's motion to dismiss Coffey as a party defendant is GRANTED.

IT IS SO ORDERED.