Anthony **COOPER**, Plaintiff,

v.

**XEROX CORPORATION**, Defendant.

No. 95–CV–6071L.

United States District Court,
W.D. New York.

Feb. 5, 1998.

H. Todd Bullard, Rochester, NY, for Anthony Cooper, Plaintiff.

Marion Blankopf, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is a discrimination case. Plaintiff Anthony Cooper, who is African–American, asserts that his former employer, Xerox Corporation, unlawfully discriminated against him because of his race in violation of Title VII of

the Civil Rights Act of 1964 (42 U .S.C. § 2000e, *et seq.* ) and the New York Human Rights Law (Executive Law § 296). Before me is Xerox' motion for partial summary judgment. For the reasons stated below the motion is granted in part and denied in part.

## BACKGROUND

Cooper was employed by Xerox from 1987 until his termination in April 1994. He was a union member and worked as an Assembler/Tester on the "pack line" for the Xerox 5090 copy machine. Starting during the summer of 1993 his immediate supervisor on the pack line was Crystal Martin. William LeBerth was the lead supervisor for all 5090 product lines.

In February 1994 Cooper began suffering wrist pain. He was diagnosed as having carpal tunnel syndrome and was absent from his job on disability leave from February 22, 1994 until April 4, 1994. When he returned, he was assigned to work on the 5090 "finishing line" instead of his usual assignment on the pack line.

Cooper, however, did not want to work on the finishing line. He complained to plant manager Kenneth Vlach that the reassignment was racially motivated. Vlach agreed to investigate Cooper's concerns.[1]

At a meeting in Vlach's office on Thursday April 21, 1994, Cooper was told by Vlach that he (Vlach) had found no evidence that the reassignment was racially motivated. Rather, Vlach had determined that William LeBerth reassigned Cooper to the finishing line because at the time Cooper returned from disability leave, the finishing line was understaffed while the pack line had enough workers. Such reassignment was authorized by Xerox' contract with the union because it involved no change in job classification, product line, wage rate, or shift. Other managers were present at this meeting including Bettina Higgins Engelmann, Cooper's immediate supervisor on the finishing line; William LeBerth; and Al Gallina, the building's Industrial Relations Representative.

The next day, a Friday, Cooper was absent. As a union member, Cooper was a participant in a program called the "Absenteeism Control Program", pursuant to which a union member with four unexplained absences over a one-year period would be terminated. Cooper's absence on Friday was his third relevant absence.

The following Monday, April 25th, Cooper came to work and told both Engelmann and Gallina that he intended to leave work after his lunch break.[2] Each reminded him that this would constitute his fourth absence and would result in his termination. Before leaving the plant, Cooper also met with Xerox' Manager of Industrial Relations, William Roscoe. Cooper told both Gallina and Roscoe to proceed with the steps required for his termination. Cooper left work as promised, and he was immediately terminated.

On June 22, 1994, Cooper filed an administrative charge with the New York State Division of Human Rights in which he alleged that his reassignment to the finishing line and his discharge were the result of race discrimination and that white employees in similar circumstances did not receive the same treatment. On November 17, 1994, the EEOC issued its Right to Sue letter. On that same day, Cooper had filed an amendment to the charge, alleging the existence of racial slurs directed at him and racial epithets written on the bathroom walls. There is no evidence, however, that the EEOC reopened its investigation and/or that a second Right to Sue letter was issued relative to the claims asserted in Cooper's amendment.

This lawsuit was initiated February 9, 1995, and an amended complaint was filed on October 16, 1996. In his amended complaint Cooper sets forth four causes of action: a "hostile working environment" claim, a retaliation claim, and an "employer liability"

---

1. Cooper also had filed a grievance with his union. Vlach told Cooper that, in accordance with Xerox' contract with the union, he could not investigate Cooper's allegations until the union grievance procedure was complete. In order to expedite Vlach's ability to investigate, Cooper withdrew the union grievance and never refiled it.

2. Cooper apparently claimed to have a doctor's appointment but, in fact, he did not.

claim[3] (all brought pursuant to Title VII), and a fourth claim, entitled "state law claim" (brought pursuant to New York's Human Rights Law).

## XEROX' MOTION

Xerox moves for partial summary judgment, seeking to dismiss Cooper's first two causes of action, the hostile environment claim and the retaliation claim, on procedural grounds.[4] Xerox asserts that neither claim is within the scope of Cooper's administrative charge and, thus, this Court lacks jurisdiction over them.

▪ A district court may hear only Title VII claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to those alleged in the EEOC charge. See Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993). "This exhaustion requirement is an essential element of Title VII's statutory scheme." Id. "'[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.'" Id. (citations omitted).

▪ The Second Circuit has designated three circumstances in which claims that were "not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." Id. at 1402. Of the three circumstances only one applies here and that is essentially an allowance of "loose pleadings," based upon the recognition that many claimants are unrepresented at the time that they file their administrative charge and, thus, their failure to properly articulate all relevant theories of liability should not be fatal to their later pursuit of federal claims. Thus, claims not included in the EEOC charge may still be pressed in federal court when "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. (citations omitted); see also Gomes v. Avco Corp., 964 F.2d 1330, 1334 (2d Cir.1992) (the district court should look "not merely to the four corners of the often inarticulately framed charge," but must consider the possible scope of any investigation "which can reasonably be expected to grow out of the charge of discrimination.") (citations omitted).

▪ However, the loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably. "Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated." Butts, 990 F.2d at 1403.

▪ The focus in determining whether the allegations of a federal complaint are "reasonably related" to those contained in the EEOC charge remains on the facts giving rise to the claim of discrimination. See Bridges v. Eastman Kodak Co., 822 F.Supp. 1020, 1026 (S.D.N.Y.1993) ("the factual allegations in an EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of

---

3. Cooper's third cause of action—"employer liability"—is not a recognized cause of action under Title VII. It appears that Cooper seeks to extend liability to Xerox for the actions of its employees as alleged in his first and second causes of action.

4. Apparently interpreting Cooper's amended complaint liberally to include "disparate treatment" claims based upon race (arising out of his reassignment and discharge), Xerox also moves against such causes of action on the grounds that Cooper has failed to demonstrate a prima facie

case and/or pretext for each, as required under the well-known burden-shifting analysis set forth first in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The amended complaint does not contain any disparate treatment claims. It alleges three federal claims—hostile environment, retaliation, and employer liability. Because Cooper has not asserted any disparate treatment claims, Xerox' arguments in support of dismissing such claims are irrelevant to the motion before me.

action is reasonably related to the plaintiff's EEOC charge"). " 'Judicial claims which serve to amplify, clarify or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.' " *McGuire v. United States Postal Service*, 749 F.Supp. 1275, 1287 (S.D.N.Y.1990) (citations omitted).

**Hostile Environment:**

■ Cooper's original administrative charge, dated June 22, 1994, alleged that because he is African American, he was "denied equal terms, conditions, and privileges of employment and [was] terminated from [his] job." Specifically, he claimed that he was reassigned to the finishing line and was ultimately discharged due to his race. There is no mention of a hostile work environment or of any harassment generally.

In the amendment to his charge, filed on November 17, 1994, Cooper made two additional allegations. He alleged that in January 1994 a co-worker called him a "black monkey" and despite complaining to Le-Berth, no action was taken. Additionally, Cooper alleged in the amendment that "during [his] employment" racial epithets appeared regularly on the bathroom walls." Cooper asserts that the allegations made in the amendment are sufficient to give this Court jurisdiction over his hostile environment claim.

Amendments to administrative charges are contemplated by the regulations promulgated under Title VII. *See* 29 CFR § 1601.12(b). Specifically, the regulations provide that:

A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

This regulation often is cited in cases where an amendment sets forth allegations that otherwise would be time-barred. The facts of this case are unique, however. Xerox does not allege that the allegations in the amendment are time-barred. Instead, Xerox relies on the fact that Cooper's amendment was filed the same day that the Right to Sue letter was issued, which stated on its face that "the Commission is terminating its process with respect to this charge." Thus, it appears that the EEOC did not investigate or have the opportunity to investigate the allegations made by Cooper in his amendment.[5]

This Court has found no other case involving an amendment filed on the same day that the Right to Sue letter was issued. There are cases involving amendments to correct unverified charges, where courts have rejected as untimely amendments made well after the EEOC's investigation was closed. For instance, in *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir.1994) the plaintiff filed an unverified charge with the EEOC.[6] A Right to Sue letter issued, the plaintiff timely filed suit in federal court, and defendant moved to dismiss the case for lack of subject matter jurisdiction due to the unverified charge. The plaintiff then filed an affidavit with the EEOC swearing to the truth and accuracy of the statements made in the original, unverified charge. The court rejected plaintiff's attempt to amend his original charge, noting that it would eviscerate the purpose of the filing requirement if amendments could take

**5.** Xerox also suggests that the amendment, even if timely, is insufficient to provide the predicate for hostile environment claims in this Court. This is a close call. The amendment contains one allegation concerning a racial epithet by one co-employee, and another vague allegation about graffiti in the bathroom, with no time stated except that it occurred "during my employment." There is no mention that the events were constant or continual or oppressive. However, while the amendment is weak, I believe it adequately provides the predicate for plaintiff's hos-

tile environment claim because the claim likely would fall within the "scope of [an] EEOC investigation" of plaintiff's amendment. *Butts*, 990 F.2d at 1402. Thus I find that the amendment provides adequate notice of Cooper's hostile environment claim, if only barely.

**6.** Verification of charges is mandatory pursuant to 42 U.S.C. § 2000e–5(b) ("Charges shall be in writing under oath or affirmation . . .").

place after the EEOC has closed its file. "[A] reasonable construction of the EEOC's regulation would simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended." *Id.* at 157. *See also Danley v. Book–of–the–Month Club,* 921 F.Supp. 1352, 1354 (M.D.Pa.1996) (dismissing Title VII case where charge not verified prior to the EEOC's issuance of a right to sue letter, noting that "[w]here ... the employer is not notified of the existence of a charge until after a right to sue letter has been issued, the employer is unfairly prejudiced"), *aff'd,* 107 F.3d 861 (3d Cir.1997); *Bacon v. Allstate Insurance Co.,* 1995 WL 360736 (N.D.Ill.1995) (dismissing Title VII case where charge not verified prior to time the "EEOC has issued a right to sue letter and thereby terminated its investigation and conciliation process").

In this case, the November 17, 1994 Right to Sue letter expressly stated that the EEOC was terminating its process concerning Cooper's original charge. There is no evidence in the record that the EEOC investigated or had the opportunity to investigate the claims asserted in the amendment. Nor is there evidence in the record that a second Right to Sue letter ever was issued. Thus, the same policy reason that guided the 'verification' cases arguably compels dismissal of Cooper's hostile environmental claim. Because Cooper's amendment was filed simultaneously with the close of the EEOC investigation, there was no adequate notice to Xerox or opportunity for the EEOC to investigate and conciliate the charges.

█ On the other hand, it is well established that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Rather, "it is a condition precedent and 'like a statute of limitations, is subject to waiver, estoppel and equitable tolling.'" *Spurlock v. NYNEX,* 949 F.Supp. 1022 (W.D.N.Y.1996) (citing *Zipes, supra* ).

This case is unique. Xerox' application is presented on a motion for summary judgment, not a motion to dismiss. Cooper's

hostile environment claim has existed right from the beginning of the litigation: it was pleaded in the original complaint, as well as the amended complaint. The case is now three years old and extensive discovery (at least 18 depositions) has occurred. Importantly, this discovery apparently has focused substantially on the issue of hostile environment, and many pages of deposition testimony as well as affidavits have been presented to this Court in opposition to Xerox' motion, concerning the alleged hostile environment at Xerox. Thus, the policy objectives compelling dismissal of Cooper's hostile environment claim as being beyond the scope of the charge do not 'fit' as comfortably in this case as in others.

More importantly, I am troubled by the lack of evidence surrounding the EEOC's treatment of the amendment, as well as any communication that may have existed between the EEOC and Cooper. From the record it appears that Cooper filed his amendment in the ordinary course, but it is unclear what happened next. There is no indication whether the EEOC forwarded the amendment to Xerox, placed the amendment in the closed file, initiated a separate investigation, or simply lost the amendment.

Similarly, there is no indication whether the EEOC communicated with Cooper in any way regarding the amendment. Did the EEOC return the amendment to Cooper? Did it advise him that it was untimely?

I do not suggest that the EEOC did something improper in this case, but the record simply does not disclose what, if anything, was done with the amendment or what, if anything, transpired between Cooper and the EEOC. *See Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 129 (7th Cir.1989) (where, on appeal and after claim dismissed for failure to file a timely amendment, EEOC admitted that "it erroneously considered the matter closed as of the date it issued the right-to-sue letter based on the original charges, when it should have accepted these charges.") In short, Xerox has not clarified this situation sufficiently for me to attribute all fault to Cooper. Thus, I am reluctant to penalize him, especially when the results would be so extreme.

Because I find that the amendment adequately sets forth the factual predicate for a

hostile environment claim, because it is unclear how the EEOC handled the amendment and/or what transpired between the EEOC and Cooper, and because it appears that substantial discovery has taken place on the issue of hostile environment, I decline to dismiss the claim on the grounds that it is beyond the scope of the EEOC charge. In the highly unique circumstances presented by this case, dismissing Cooper's hostile environment claim would be draconian and unfair. Thus, I deem the amendment timely filed for purposes of providing the administrative predicate for Cooper's present hostile environment claim and, accordingly, Xerox' motion to dismiss the hostile environment claim is denied.[7]

**Retaliation:**

■ Cooper's retaliation claim is different, however. Retaliation allegations never were asserted in either the original or amended EEOC charge. Thus, unlike the hostile environment claim, the adequacy of the retaliation charge is not contingent on its timeliness. Retaliation simply never was asserted in any EEOC submission. As such, this issue is more straightforward and I find that the claim should be barred for failure to properly exhaust administrative remedies.

Cooper alleges that "claims related to retaliation are encompassed in Paragraphs 2, 4, 10 and 11" of the charge and the amended charge. Bullard Aff't at ¶ 66. I disagree. Paragraphs 2 and 4 of the original charge state as follows:

2. I began working for respondent on November 30, 1987. My position at the time of my termination was Assembler/Tester. During my entire period of employment, I was a fully satisfactory employee and gave respondent no reason to treat me in a disparate manner or terminate me.

4. In April, 1994 I had telephone respondent to inform them I would be returning to work after a disability leave with no restrictions on the following Monday. Ms. Martin had told me this was "great"; how-

ever, Ben Wilburn, a co-worker had later informed me that I would not be returning to my line where I had been assigned and satisfactorily performed my job duties for four years, I then attempted to learn the reason for my removal from my line from Ms. Martin and Bill LeBerth, Head Foreman, who was unavailable when I called and who did not return my call, but was unsuccessful.

Paragraphs 10 and 11, contained in the amended charge, read as follows:

10. In January, 1994, Sam Avallone, a co-worker, who is White called me a "Black monkey". I brought this racial slur to the attention of William LeBerth, Lead Foreman, who is also White. Mr. LeBerth merely asked me what I wanted him to do about it and no disciplinary action was taken against Mr. Avallone.

11. During my employment, racial remarks were written on the walls of the men's room, including, "Die nigger", "KKK rules", "Malcolm X, just another dead nigger". Although I had complained about this harassment and the degrading effect it had on me, the remarks would be removed, but were immediately replaced.

Nothing in these paragraphs suggests that Cooper thought he was being retaliated against or even provides any factual basis to infer an alleged retaliation. There is nothing elsewhere in either the original or amended charge about Cooper having voiced complaints about racial discrimination or hostile environment prior to his disability leave or return therefrom. In short, there is nothing in the charge to suggest that Cooper believed retaliation had anything whatsoever to do with his reassignment and/or discharge.

This case is similar to *Chinn v. City University of New York School of Law*, 963 F.Supp. 218 (E.D.N.Y.1997). There, the court dismissed a former employee's claim of retaliation because it was not reasonably related to the wrongful reassignment and wrongful discharge claims set forth in his EEOC charge. The court noted that plain-

---

**7.** This decision resolves the limited issue of whether the amendment was timely and, therefore, whether Cooper's hostile environment claim is properly before this Court. This deci- sion does not address or resolve the merits of Cooper's hostile environment claim, or any other procedural defenses to this claim. Such issues are left for another day.

tiff put nothing in his EEOC charge about his history of activism against defendant which formed the basis for plaintiff's later retaliation allegations. Thus, because the plaintiff's retaliation claim was predicated on facts not expressed in the EEOC charge, the court determined that "[d]iscriminatory conduct or factual predicates alleged for the first time in the complaint are barred if they fall outside the reasonable scope of EEOC inquiry." *Id.* at 223

> A plaintiff also may not sue on a different cause for the discriminatory action than that raised before the EEOC when the new allegation exceeds the scope of a reasonable EEOC investigation, which is the case when new factual allegations support the new theory of discrimination. *Id.*

This Court is aware that in *Chinn*, the plaintiff had not checked the "retaliation" box on his EEOC submissions, and in this case, Cooper did check the "retaliation" box on the so-called DHR "information sheet." However, the information sheet is not part of the official, verified charge. It expressly states across the top that it is "NOT a DHR Verified Complaint" and that it is "for informational purposes only."

Moreover, even if it were considered part of the charge, it is well-settled that merely checking a box, or failing to check a box does not necessarily control the scope of the charge. The more critical analysis is whether there is any explanation or description supporting a particular claim. Just as a plaintiff would not be precluded from bringing a retaliation claim simply because he checked the wrong box on his administrative charge (provided that he alleged facts supporting such a claim), the fact that Cooper checked the box for retaliation does not mean that he can now bring such a claim in this action even though he alleged no facts in his administrative charge related to retaliation.

"Were it otherwise, plaintiffs could circumvent the 'reasonably related' rule altogether by simply checking every box on their EEOC form, even if they alleged no facts to support their claims." *McKinney v. Eastman Kodak Co.*, 975 F.Supp. 462, 466 (W.D.N.Y.1997). This would defeat the investigatory and mediation goals underlying Title VII. *See Butts*, 990 F.2d at 1403.

Nor is this case like *Ausfeldt v. Runyon*, 950 F.Supp. 478 (N.D.N.Y.1997). There, the plaintiff alleged that her supervisor sexually harassed her and retaliated against her. Her formal charge alleged harassment only, but the court found that her retaliation claim was reasonably related to the allegations in the original charge because the charge contained a detailed description of a pervasively hostile and abusive environment including allegations that her supervisor disciplined her for previously complaining to others about his behavior, that he confronted her with "false charges based on hearsay" that she feared that confronting him directly would "result in retaliations." Thus, although the plaintiff had failed to check the retaliation box on an "informal" administrative charge, the court determined that "there was a [sic] enough information before the EEOC so that the scope of their investigation should have included allegations of retaliation." *Id.* at 486.

Cooper's EEOC charge contains no similar or comparable descriptions leading me to conclude that a retaliation claim would be within the scope of the EEOC's investigation. Accordingly, I find that Cooper's second cause of action, for retaliation, is not reasonably related to the allegations in his administrative charge and therefore is dismissed.[8]

**State Law claim:**

Because I have sustained Cooper's federal hostile environment claim, I retain jurisdic-

---

**8.** As noted, Cooper's third cause of action—"employer liability"—appears only to extend liability to Xerox for the acts of its employees. "[A] plaintiff seeking to recover from an employer for hostile work environment must demonstrate some specific basis to hold the employer liable for the conduct of its employees." *Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997). Specific legal and factual standards exist for making this determination. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995); *Karibian v. Columbia University*, 14 F.3d 773 (2d Cir.1994); *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59 (2d Cir.1992). However, these standards are analyzed as part of the hostile environment claim; not a separate cause of action. Thus, because "employer liability" is not a recognized cause of action under Title VII, this claim too is dismissed.

tion over his state claim, brought pursuant to NYHRL § 296, as well. *See* 28 U.S.C. § 1367(a). Accordingly, Xerox' motion to dismiss this claim is denied.

### *CONCLUSION*

For all the above reasons, Xerox' motion for partial summary judgment (# 35) is GRANTED in part and DENIED in part. Cooper's second and third claims for retaliation and for "employer liability" are dismissed with prejudice. The motion relating to the second and fourth claims for hostile environment is denied.

IT IS SO ORDERED.