HENRY C. CHINN, JR., Plaintiff,

v.

CITY UNIVERSITY OF NEW YORK SCHOOL OF LAW AT QUEENS COLLEGE and Dean Kristen Booth Glen, Defendants.

No. CV 96 4051 (RJD).

United States District Court, E.D. New York.

May 21, 1997.

---

Lennox S. Hinds, Gregory Tyrone Smith, Stevens Hinds & White P.C., New York City, for plaintiff.

Lisa R. Dell, Assistant Attorney General of the State of New York Office of the Attorney General, New York City, for defendants.

### *MEMORANDUM & ORDER*

DEARIE, District Judge.

Plaintiff Henry C. Chinn, Jr. ("Chinn") commenced this employment discrimination action against the City University of New York at Queens College School of Law ("CUNY") and Dean Kristen Booth Glen ("Dean Glen"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), 42 U.S.C. § 1981 (" § 1981"), and New York state law. Compl. ¶ 1. Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. Defendants' motion is granted in part and denied in part.

### *BACKGROUND*

The Court accepts as true the allegations in the complaint. Chinn, an African–American male, was employed by City University, at Queens College School of Law, from 1990 to 1996. Compl. ¶¶ 9, 12. During the relevant period, defendant Dean Glen was, in her

capacity as dean of the law school, an employee and agent of CUNY. *Id.* ¶ 8. Until January 1996, Chinn worked as a Higher Education Officer in the Career Planning Department. *Id.* ¶ 12. During his employment at CUNY, Chinn was active on committees dealing with diversity and minorities at the Law School, and was highly critical of CUNY for its alleged "long standing pattern and practice of disparate treatment of African–American[s]." *Id.* ¶ 13–20.

In December 1995, Dean Glen advised plaintiff that he was being reassigned to serve as Associate Director of Financial Aid in the Financial Aid Office. *Id.* ¶ 21. Chinn expressed concern that his experience did not suit the new assignment, and requested time to consider it. *Id.* ¶ 22. Subsequently, a union representative informed plaintiff that the transfer was valid under the collective bargaining agreement, and that he should accept. *Id.* ¶ 23. Chinn was "involuntarily reassigned" to the Financial Aid Office in January 1996. *Id.* ¶ 24. Chinn alleges, upon information and belief, that Dean Glen's stated reason for the reassignment was to foster racial diversity. *Id.* ¶ 25. However, while CUNY's new diversity plan mandated that "no office could have all white or all black employees," upon information and belief, Chinn alleges that the Financial Aid Department had only black employees at the time of his reassignment. *Id.* ¶¶ 25–26. According to the complaint, a white male was hired under a new title and at a higher salary to perform Chinn's duties in the Career Planning Department. *Id.* ¶ 27.

In February 1996, defendant Dean Glen informed Chinn that he would be terminated as of June 30, 1996. *Id.* ¶¶ 28–29. Upon information and belief, Chinn contends that he was the only Financial Aid Office employee to be terminated due to alleged budget cuts, and that Dean Glen was aware of impending budget constraints in the Financial Aid Office when she transferred him there. *Id.* ¶¶ 30, 32. Chinn alleges that his reassignment and ultimate termination were motivated by "racial animus" and retaliation for his activism against CUNY's treatment of minorities. *Id.* ¶ 31.

On March 15, 1996, Chinn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging only that his involuntary reassignment and termination were the result of racial discrimination. Dell Aff., Ex. A; Smith Aff., Ex. A. Plaintiff did not mention retaliatory motive on the charge form or in his accompanying affidavit, did not inform the EEOC of any of his oppositional activities directed at CUNY's treatment of minorities, and did not check the box identifying "retaliation" as the "cause of discrimination." *Id.*

Plaintiff's complaint is inconsistent with regard to date of receipt of the EEOC's right to sue letter. One paragraph alleges receipt on May 16, 1996, while a later paragraph states that May 16, 1996 was the date of issuance. *Compare* Compl. ¶ 2 *with* ¶ 35. Chinn's counsel avers that Chinn received the EEOC's letter several days after May 16, 1996, but that his client cannot recall the exact date. Smith Aff. ¶ 5. The EEOC's right to sue letter indicated May 16, 1996 as "Date Mailed," and informed Chinn that he "must sue *WITHIN 90 DAYS* from [his] receipt of this Notice." *Id.*, Ex. C (emphasis in original).

On August 16, 1996, Chinn commenced this action. Plaintiff's **first** cause of action alleges that his termination by defendants was in violation of § 1981 and Title VII. Compl. ¶ 36. The **second** cause of action alleges that defendant Dean Glen's actions were retaliatory, in violation of § 2000e–2(a)(1) of Title VII. *Id.* ¶ 38. The **third** cause of action is a Title VII claim against CUNY for failing to take corrective action of Dean Glen's discriminatory conduct. *Id.* ¶¶ 40–41. For a **fourth** cause of action, plaintiff alleges that Dean Glen, in her official capacity, discriminated against him on the basis of race, in violation of § 2000e–2(a)(1) of Title VII. *Id.* ¶ 43. The **fifth** claim alleges that Dean Glen, acting individually and in her official capacity, mistreated, harassed, intimidated and retaliated against plaintiff because of racial animus, in violation of 42 U.S.C. § 1981. *Id.* ¶ 45. The **sixth** claim charges CUNY with retaliatory discharge, in violation of § 2000e–3(a) of Title VII. *Id.* ¶ 47. The **seventh** cause of action alleges that defendants' discriminatory

actions violated New York's anti-discrimination law. *Id.* ¶ 49. Finally, the **eighth** claim charges defendants with intentional or, in the alternative, negligent infliction of emotional distress. *Id.* ¶ 51. Plaintiff seeks a declaratory judgment, reinstatement, back pay, compensatory and punitive damages, and attorneys' fees. *Id.* at 11–12.

## DISCUSSION

During oral argument before the Court on May 7, 1997, plaintiff's counsel acknowledged that several of the claims in his complaint should be dismissed, and defendants' counsel conceded that several of their grounds for dismissal are not warranted.

## I. TITLE VII

### A. Ninety-Day Time Limit

Defendants conceded that Chinn's Title VII claims are not time-barred. In light of the evidence of the mailing date and the absence of an exact date of receipt, the Court is satisfied that Chinn commenced the Title VII claims in a timely fashion, less than ninety days after receiving the EEOC's notification.

### B. Title VII Claims against Defendant Dean Glen

■ Plaintiff conceded that Title VII claims against defendant Dean Glen (contained in the **first, second** and **fourth** causes of action) must be dismissed based on the Second Circuit's decision in *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995). *Tomka* held that "agents," such as supervisory personnel, are not "employers" for purposes of Title VII liability. 66 F.3d at 1314–15; *see* 42 U.S.C. § 2000e(b). The Second Circuit, acknowledging a split in the circuits, concluded that Title VII's carefully calibrated remedial scheme does not impose individual liability on agents of employers, but only holds the employer liable. *Tomka*, 66 F.3d at 1313–15. The Court concludes that plaintiff cannot hold Dean Glen liable on his Title VII claims.

### C. Title VII Retaliation Claims Not Raised in Administrative Charge

Defendants contend that Chinn cannot proceed with his Title VII retaliation claims (included in **first, second** and **sixth** causes of action) because they are not within the scope of plaintiffs EEOC charge. Def Mem of Law at 5–7. Plaintiff concedes that he did not raise a retaliation claim, but responds that the retaliation charge is reasonably related to the racial discrimination allegations raised before the EEOC. Pl. Mem of Law at 6–7.

Exhaustion of administrative remedies and adequate notice to defendants are crucial elements of Title VII's remedial scheme. *Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir.1993) ("[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC") (internal citation omitted); *Adames v. Mitsubishi Bank Ltd.*, 751 F.Supp. 1565, 1571 (E.D.N.Y.1990) (noting importance of "adequate notice" of discrimination allegations). If a Title VII claim is not included in the EEOC charge, a court can hear the claim only if it is based on conduct that is "reasonably related" to the allegations raised before the EEOC. *Butts*, 990 F.2d at 1401. The Second Circuit has instructed courts to look beyond "the four corners of the often inarticulately framed charge" in determining whether the allegations in the complaint are reasonably related to the EEOC charge. *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). The "reasonably related" requirement is satisfied "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Butts*, 990 F.2d at 1402 (internal citation omitted). This exception to the prerequisite of raising all charges to the EEOC is grounded in notions of fairness and the recognition that complainants generally do not have the assistance of counsel when filing EEOC charges. *Id.*

■ An imperfect fit between the EEOC charge and complaint allegations is not fatal as long as Title VII's scheme of

agency adjudication in the first instance is not thwarted. *Ong v. Cleland,* 642 F.2d 316, 319–20 (9th Cir.1981) (charge of discrimination in promotion did not encompass complaint allegation of constructive discharge). While "[j]udicial claims which serve to amplify, clarify or more clearly focus on earlier EEOC complaints are appropriate[,][a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *McGuire v. U.S. Postal Service,* 749 F.Supp. 1275, 1287 (S.D.N.Y.1990) (internal citation omitted) (incidents of retaliation during employment not reasonably related to complaint alleging retaliatory dismissal).

■ Discriminatory conduct or factual predicates alleged for the first time in the complaint are barred if they fall outside the reasonable scope of EEOC inquiry. *See Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 799–800 (E.D.N.Y.1996) (dismissal of allegations of decreased hours and denial of supplies where EEOC charge alleged functional demotion); *cf. Silver,* 602 F.2d at 1090–91 (post-employment blacklisting allegation within scope of EEOC investigation where charge alleged comprehensive plan of discrimination); *Tipler v. E.I. duPont deNemours & Co.,* 443 F.2d 125, 131 (6th Cir.1971) (charge of discharge for asserting employee rights sufficiently encompasses complaint allegation of discharge because of unlawful employment practices). A plaintiff also may not sue on a different cause for the discriminatory action than that raised before the EEOC when the new allegation exceeds the scope of a reasonable EEOC investigation, which is the case when new factual allegations support the new theory of discrimination. *See Equal Employment Opportunity Commission v. Bailey Co., Inc.,* 563 F.2d 439, 446 (6th Cir.1977) (religious discrimination allegation beyond scope of EEOC inquiry of sex and race discrimination charge), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *Chojar v. Levitt,* 773 F.Supp. 645, 650–51 (S.D.N.Y.1991) (religious discrimination not within scope of EEOC charge asserting race and national origin discrimination). Furthermore, a vague, general charge of discriminatory conduct raised before the EEOC is not sufficient to trigger agency investigation of specific instances of discrimination alleged in the complaint. *Butts,* 990 F.2d at 1403.

■ The Court concludes that Chinn's Title VII retaliation claims are not "reasonably related" to the race discrimination charge presented to the EEOC. Chinn's charge of discrimination form and accompanying affidavit submitted to the EEOC alleged that his reassignment and discharge were motivated by racial discrimination. Dell Aff., Ex. A; Smith Aff., Ex. A. Chinn claimed that his involuntary reassignment to the Financial Aid Office was a pretext to vacate his position as an accommodation for a white replacement. Curiously, Chinn also suggested that "cronyism" was at work—his replacement was allegedly a friend of defendant Dean Glen. Smith Aff., Ex. A. On the charge of discrimination form, Chinn checked off the box marked "race" as the sole response to "cause of discrimination." Dell Aff., Ex. A. He did not mark the box labeled "retaliation" or even hint that retaliatory treatment was involved. *See id.; Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir.1994) (court finds significant that plaintiff only checked one box on charge form). Nor did Chinn put the EEOC on notice of his history of activism against CUNY for its allegedly discriminatory practices, which he now alleges was the retaliatory basis for his transfer and eventual dismissal. Compl. ¶ 31.

The EEOC had every reason to believe that Chinn's complaint was confined to allegations of racial discrimination, in the limited context of his reassignment and discharge. Chinn's Title VII retaliation claims present both a new legal theory, namely retaliation, and new factual allegations, namely his longtime criticism of CUNY's treatment of minorities. Plaintiff's racial discrimination charge is separate and distinct from the retaliation allegations. Even under a broad, liberal reading of Chinn's EEOC charge, the reasonable scope of the agency's investigation could not be expected to encompass Chinn's allegations of retaliatory motive. *See Butts,* 990 F.2d at 1402; *McGuire,* 749 F.Supp. at 1287. The "reasonable related-

ness" test is not satisfied by the improbable possibility that the EEOC could have stumbled into a new universe of allegations that the plaintiff alleges for the first time in his complaint. Allowing Chinn to raise Title VII retaliation claims for the first time to this Court would undermine the administrative remedial process mandated by Title VII and deprive defendants of notice of the charges. Plaintiff's Title VII retaliation claims are dismissed for failure to exhaust administrative remedies.

## II. SECTION 1981 CLAIMS

### A. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars plaintiff's § 1981 claims against CUNY and against Dean Glen, sued in her official capacity. Def. Mem of Law at 8–11. Plaintiff conceded that the Eleventh Amendment bars his § 1981 claims against CUNY, but contends that he can proceed against Dean Glen for reinstatement, and can assert § 1981 claims against Dean Glen in her individual capacity. Pl. Mem. of Law at 8–9.

### 1. Defendant CUNY

 The Eleventh Amendment bars a suit in federal court against a state or one of its agencies in the absence of the state's explicit consent to be sued or Congress's unequivocal abrogation of immunity.[1] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* at 100–101, 104 S.Ct. at 908; *see also Seminole Tribe of Florida v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996) ("we have often made it clear that the relief sought by plaintiff suing a State is irrelevant to the question of whether is suit is barred by the Eleventh Amendment"); *Dube v. State Univ. of New York,* 900 F.2d 587, 594–95 (2d Cir.1990) (no legal or equitable relief against SUNY because of Eleventh Amendment), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d

986 (1991). For purposes of enjoying Eleventh Amendment immunity, courts in this circuit have found City University to be an arm of the State of New York. *Moche v. City University of New York,* 781 F.Supp. 160, 165 (E.D.N.Y.1992), *aff'd without op.,* 999 F.2d 538 (2d Cir.1993). The Court dismisses plaintiff's § 1981 claim (included in the **first** cause of action) against defendant CUNY because it is barred by the Eleventh Amendment.

### 2. Defendant Dean Glen, in her Official Capacity

Analysis of Eleventh Amendment immunity for state officials, acting in their official capacity, is more complicated. The applicability of the Eleventh Amendment to official capacity actions turns on the nature of relief sought, namely, prospective or retrospective remedies. *See Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). The Eleventh Amendment bar applies "when State officials are sued for damages in their official capacities." *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985) (internal citations omitted); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993).

However, a private party can seek prospective injunctive relief to abate a continuing violation of federal law by a state official acting in his or her official capacity. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985); *Edelman v. Jordan,* 415 U.S. 651, 666–67, 677, 94 S.Ct. 1347, 1357–58, 1362, 39 L.Ed.2d 662 (1974) ("a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury"). This "exception" to Eleventh Amendment immunity is necessary "to vindicate the federal interest in assuring the supremacy of [federal] law." *Green,* 474 U.S. at 68, 106 S.Ct. at 426; *see also Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct.

---

**1.** Section 1981 does not abrogate states' Eleventh Amendment immunity. *Daisernia v. State of New York,* 582 F.Supp. 792, 800, 803 (N.D.N.Y.1984). There is no suggestion that New York State has waived its immunity from suit in federal court.

441, 453–54, 52 L.Ed. 714 (1908) (under certain circumstances, suit against state official not treated as action against the state). Injunctive relief against a state official is available to compel compliance with federal law even if it results in "a substantial ancillary effect on the state treasury." *Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). In contrast, retrospective compensatory relief, whether "expressly denominated as damages . . . or tantamount to an award of damages for a past violation of federal law," does not vindicate sufficient interests to justify overcoming the Eleventh Amendment bar. *Id.; see also Edelman*, 415 U.S. at 666–68, 94 S.Ct. at 1357–58 (retrospective remedy styled as equitable restitution not permissible). To avoid a partial "end-run" around Eleventh Amendment immunity, any remedy for past violations of federal law, including declaratory judgment, is barred. *Green*, 474 U.S. at 72–73, 106 S.Ct. at 427–28.

Courts have found that an order directing a state official to reinstate a plaintiff falls in the category of prospective relief permitted by tile Eleventh Amendment. *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356 (prospectively restoring plaintiffs to state's welfare rolls did not violate Eleventh Amendment); *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir.1985) (reinstatement to position "is purely prospective relief that orders state official to return the former employee to the state's payroll"); *Russell v. Dunston*, 896 F.2d 664, 667–68 (2d Cir.) (reinstatement to medical leave not barred by Eleventh Amendment), *cert. denied*, 498 U.S. 813, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Fry v. McCall*, 945 F.Supp. 655, 660 (S.D.N.Y.1996) (reinstatement claim not barred by Eleventh Amendment); *Marcano v. Downstate Medical Center*, No. 84–CV–1657, 1988 WL 235648, *1 (E.D.N.Y. June 23, 1988) (§ 1981 claim for reinstatement can proceed); *Daisernia*, 582 F.Supp. at 803 (same).

The Second Circuit has also held that the award of attorneys' fees, in the context of a constitutional claim for prospective injunctive relief, is considered "ancillary to the injunction claim and therefore not barred by the Eleventh Amendment." *Dwyer*, 777 F.2d at 837; see also *Hutto v. Finney*, 437 U.S. 678, 693–700, 98 S.Ct. 2565, 2574–78, 57 L.Ed.2d 522 (1978) (attorneys' fees pursuant to § 1988 not barred by Eleventh Amendment).

Plaintiff's **first** and **fifth** causes of action include § 1981 claims against defendant Dean Glen in her official capacity. Compl. ¶¶ 36, 45. The operation of Eleventh Amendment immunity for Dean Glen acting in her official capacity turns on the nature of relief sought by Chinn. The Eleventh Amendment clearly bars recovery of any money damages from Dean Glen for actions taken in her official capacity. However, plaintiff can sue defendant Dean Glen in her official capacity for reinstatement and, if successful, can recover corresponding attorneys' fees.

### 3. Defendant Dean Glen, in her Individual Capacity

Defendants acknowledge that the Eleventh Amendment provides no shield of immunity to state officials sued in federal court in their individual capacity, regardless of the nature of relief sought. Chinn's **fifth** cause of action, which includes an individual capacity § 1981 claim against defendant Dean Glen, is not barred by the Eleventh Amendment.

### B. Failure of State a Claim

Defendants argue that Chinn's § 1981 claims that are not barred by the Eleventh Amendment must be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim because Chinn has not alleged purposeful discrimination or the existence of a contract. Def. Mem. of Law at 11–13.

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio*, 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). A court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991).

To state a claim under § 1981, a plaintiff must allege

(1) [that he or she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) [that] the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts, sue and be sued, give evidence, etc.).

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). A § 1981 action must allege "that the defendants' acts were purposefully discriminatory ... and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571–72 (2d Cir.1988) (en banc). A Rule 12(b)(6) motion to dismiss a § 1981 claim cannot be defeated by the complaint's "naked assertions" of discrimination; rather, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713–14 (2d Cir.1994) (internal citations omitted).

Section 1981(b) provides that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b). In order to state a § 1981 claim for discriminatory discharge or discriminatory treatment during employment, "according to the plain language of Section 1981, plaintiff's claim would have to be based on a contractual relationship" with the employer. *Moscowitz v. Brown*, 850 F.Supp. 1185, 1192 (S.D.N.Y.1994).

Chinn has alleged sufficient circumstances to give rise to an inference of intentional discrimination to survive a Rule 12(b)(6) motion. The complaint alleges that Chinn's involuntary reassignment and termination "were motivated [in part] by racial animus towards plaintiff." Compl. ¶¶ 31, 45. Chinn supports his contention of intentional discrimination and pretextual motive with fact-specific allegations that Chinn's replacement was white, that he was transferred to an all-black department while the stated rea-son for the reassignment was to create racial diversity, that Dean Glen knew Chinn's new position in the Financial Aid Office was subject to budget cuts, and that defendants were retaliating against him for his opposition to CUNY's allegedly discriminatory policies toward blacks and other minorities. *Id.* ¶¶ 25–27, 31–32. Accepting plaintiff's factual assertions in the complaint as true and construing them favorably, the Court cannot conclude that Chinn would not be able prove his claim of intentional discrimination.

Chinn makes no allegation in the complaint of the existence of a contract between him and CUNY. However, plaintiff argues that his hiring in 1990 and subsequent reappointments establish an employment contract with his employer. Pl. Mem. of Law at 10. While the complaint may be marginally deficient, at this stage, the Court cannot conclude with certainty that plaintiff would be unable to establish the requisite contractual relationship.

## III. STATE LAW CLAIMS

### A. Eleventh Amendment

Defendants seek dismissal of Chinn's state law discrimination claim (**seventh** cause of action) and tort claim (**eighth** cause of action) for lack of subject matter jurisdiction based on Eleventh Amendment immunity. Def. Mem. of Law at 13–15. Although not specified in the complaint, supporting papers clarify that plaintiffs state law statutory action is brought under New York's Human Rights Law, Executive Law § 290 *et seq.* *See* Pl. Mem. of Law at 9.

The Eleventh Amendment bar applies to state law pendant claims, as well as to claims arising under federal law, in the absence of a state statute explicitly waiving the state's sovereign immunity by consenting to be sued in federal court. *Pennhurst*, 465 U.S. at 99, 120–21, 104 S.Ct. at 907, 918–19. Pendant jurisdiction does not allow a plaintiff to evade the Eleventh Amendment's proscription against suing states or their agencies in federal court. *Id.* at 121, 104 S.Ct. at 919. A state's consent to suit in its own courts is not a sufficient waiver of Eleventh Amendment immunity. *Id.* at 99 n. 9, 104

S.Ct. at 907 n. 9. Courts in this circuit have ruled that the general consent to suit provision of New York Executive Law § 297(9), which provides for "a cause of action in any court of appropriate jurisdiction" against the state for discrimination, does not waive New York State's Eleventh Amendment immunity from suit in federal court. *Moche,* 781 F.Supp. at 165; *Cassells v. Univ. Hosp. at Stony Brook,* 740 F.Supp. 143, 147–48 (E.D.N.Y.1990); *see also Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 306, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990) (general consent to be sued is not adequate waiver of Eleventh Amendment immunity).

■ Whereas a federal court may award injunctive relief against a state official in an official-capacity action based on the *Ex Parte Young* "exception," the Eleventh Amendment bars even prospective injunctive relief based on violations of state law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911 (state law claim does not implicate supremacy of federal law). All of plaintiffs state law claims against defendants CUNY and Dean Glen in her official capacity, regardless of the nature of relief sought, are dismissed on Eleventh Amendment grounds.

## B. Tort Claim

■ Chinn's tort claim against defendants for infliction of emotional distress (**eighth** cause of action) must be dismissed also for lack of jurisdiction because it is brought in the wrong forum. New York Education Law § 6224(4) confers

> [e]xclusive jurisdiction ... upon the Court of Claims to hear, audit and determine the claims of any person against the City University of New York ... in connection with causes of action sounding in tort alleged to have been committed by a senior college of such university or any officer ... of such university....

N.Y. Educ. Law § 6224(4). Queens College School of Law is a "senior college" within the City University system. N.Y. Educ. Law § 6202(5); Dell Aff. ¶ 3, Ex. B. Chinn's tort claim, asserted against Queens College School of Law and against Dean Glen, an officer of CUNY, must be brought in the New York Court of Claims, not this Court.

## CONCLUSION

For the foregoing reasons, the Court rules as follows: (1) Title VII claims are not time-barred; (2) *Tomka* bars holding Dean Glen liable on Title VII claims (**first, second** and **fourth** claims implicated); (3) Title VII retaliation claims are dismissed because they are not reasonably related to the scope of the EEOC investigation (**first, second, sixth** claims implicated); (4) all § 1981 claims against CUNY are dismissed on Eleventh Amendment grounds (**first** claim implicated); (5) § 1981 claims seeking monetary damages from Dean Glen in her official capacity are dismissed on Eleventh Amendment grounds, but plaintiff can seek reinstatement and corresponding attorneys' fees (**first** and **fifth** claims implicated); (6) Eleventh Amendment does not bar § 1981 claims against Dean Glen in her individual capacity (**fifth** cause of action implicated); (7) defendants' Rule 12(b)(6) motion on the remaining § 1981 claims is denied (**first** and **fifth** cause of action); (8) the New York Human Rights Law and tort claims against CUNY and against Dean Glen in her official capacity are dismissed based on Eleventh Amendment immunity (**seventh** and **eighth** claims); (9) the Court lacks jurisdiction over the tort claim (**eighth** cause of action) because it is brought in the wrong forum.

SO ORDERED.