**Deidra MIDDLEBROOKS, Plaintiff,**

v.

**UNIVERSITY OF MARYLAND AT COLLEGE PARK, et al., Defendants.**

No. CIV. A. AW–96–1144.

United States District Court, D. Maryland.

Sept. 23, 1997.

Lisa Alexis Jones, Elmer Douglass Ellis, Washington, DC, for Plaintiff.

J. Joseph Curran, Jr., Attorney General of State of Maryland and Anne L. Donahue, Assistant Attorney General, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff commenced this action against Defendants alleging race and gender discrimination in violation of 20 U.S.C. § 1681 ("Title IX"), 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion for Summary Judgment. No hearing is deemed necessary. Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment.

### Factual Background

Plaintiff, an African–American female, enrolled in the University of Maryland's Ph.D. Program in Applied Mathematics ("MAPL") in the Fall of 1992, Pl.'s Sec. Am. Compl. ¶¶ 3, 5, and received the Patricia Roberts Ham's Fellowship for minority students. Defs.' Mem. Supp. Summ. J. at 9. MAPL consists of three components: course work, qualifying exams, and a dissertation. Defs.' Mere. Supp. Summ. J. at 3. According to the former chair of the department, the program is difficult to complete, and only forty to fifty percent of students in the program eventually get a Ph.D. Johnson Dep. at 64. Students in the MAPL program are required to pass qualifying exams in three subject areas, with one being a math area and a second being an area to which math can be applied. Kellogg Aff. ¶ 3. At the time of Plaintiff's enrollment in the MAPL program, MAPL students were required to pass three exams by the end of their third year. *Id.* ¶ 4. This requirement changed in the Spring of 1995, requiring students to pass two qualifying exams by the end of their third year, and a third by the end of their fourth year. *Id.* ¶ 6; Pl.'s Opp'n Defs.' Mot. Summ. J. at 3 n. 1. Plaintiff agreed to use the new requirements. Defs.' Mem. Supp. Summ. J., Ex. 4 at 5.

Plaintiff took three qualifying exams in August 1994, three qualifying exams in January 1995, one qualifying exam in May 1995, and two qualifying exams in August 1995. Defs.' Mem. Supp. Summ. J. Ex. 4 at 3–10. Plaintiff failed all nine exams. *Id.* Upon her failure to pass two qualifying exams by the end of her third year, plaintiff was notified in October 1995 of her termination from the MAPL program. *Id.* at 4; Middlebrooks Aff. ¶ 19.

Plaintiff commenced this action, contending that the termination was motivated by race and gender discrimination. Defendants are the University and the following faculty members, who are named in both their official and individual capacities: Dr. Lin Chao (Zoology Department), Dr. Jeffery Cooper

(director of MAPL program during Plaintiff's enrollment), Dr. Bruce Golden (chairman of Operations Research Department during Plaintiff's enrollment), Dr. James Schafer (Mathematics Department), and Dr. Wolfgang Stephan (Zoology Department). Defs.' Mem. Supp. Summ. J. at 4–5; Pl.'s Sec. Am. Compl. ¶ 4.

## Discussion

### I. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While a court must be cautious with summary judgment in discrimination cases because particular states of mind are decisive elements of the claim, the fact that motive is a critical issue does not mean that summary judgment is never appropriate. *Ballinger v. North Carolina Agric. Ext. Serv.*, 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). The evidence of the non-movant is to be believed and all justifiable inferences drawn in her favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In determining whether genuine and material factual disputes exist, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to the record, the Court concludes that summary judgment for Defendants must be granted.

### II. Eleventh Amendment[1]

■ The Eleventh Amendment bars federal courts from hearing claims brought by a citizen against her own state or another state. *See Palotai v. Univ. of Md. College Park*, 959 F.Supp. 714, 715 (D.Md.1997). The Eleventh Amendment serves as a block on the exercise of federal jurisdiction over these claims. *Biggs*, 66 F.3d at 60. The block extends to suits against state agencies, and has been held to protect the University of Maryland. *Palotai*, 959 F.Supp. at 716 (citing *Bickley v. Univ. of Md.*, 527 F.Supp. 174, 181 (D.Md.1981)).[2]

■ Congress has the power, when acting under the authority of the Fourteenth Amendment, to abrogate this immunity by enacting legislation that allows federal courts to hear these claims. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976). It is clear that Congress has acted to abrogate the immunity when a state is sued under Title IX or Title VI. *Lane v. Pena*, 518 U.S. 187, ——, 116 S.Ct. 2092, 2099, 135 L.Ed.2d 486 (1996)

---

**1.** Defendants argue that Plaintiff's § 1981 claim against the University is barred by the Eleventh Amendment. Defs.' Mem. Supp. Summ. J. at 20. Plaintiff has not responded to Defendants argument. It is within the Court's discretion to consider whether the Eleventh Amendment is a bar to all of plaintiff's claims. *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir.1995) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982). *See also Wilson–Jones v. Caviness*, 99 F.3d 203 (6th Cir. 1996) (arguing that the Supreme Court's language in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) supersedes *Patsy* and *requires* federal courts to raise Eleventh Amendment claims), *reh'g denied and amended by* 107 F.3d 358 (6th Cir.1997).

**2.** For support of the conclusion that the University of Maryland is a state agency, *see* Md.Code Ann. Educ. § 12–102(d) (1997) (most of governing Board of Regents appointed by Governor) Md.Code Ann. Educ. § 12–104(g)(5) (1997) (Maryland legislature has not waived University's Eleventh Amendment protection); Md.Code Ann. Educ. §§ 12–104(j), 12–105(a)(3), (f) (1997) (University reports to state agencies on variety of issues); and Md.Code Ann. Educ. § 12–105(d) (1997) (University income is deposited in the state treasury unless the State Treasurer directs otherwise).

(quoting 42 U.S.C. § 2000d–7(a)). There-fore, Plaintiff's claims alleging violations of Title IX and Title VI are not barred by the Eleventh Amendment.

■ However, Congress has not taken such action for § 1981 or § 1983 claims. Thus, Plaintiff's §§ 1981 and 1983 claims against the University, both for equitable and monetary relief, are barred by the Eleventh Amendment. *See Coleman v. Univ. of Kan. Med. Center*, 1997 WL 457733 at *2 (D.Kan. July 9, 1997) (§§ 1981, 1983); *Chinn v. City Univ. of N.Y. Sch. of Law at Queens College*, 963 F.Supp. 218, 224 (E.D.N.Y.1997) (§ 1981); *Bickley v. Univ. of Md.* 527 F.Supp. 174, 181–82 (D.Md.1981) (§ 1983). *See also Seminole Tribe of Florida v. Florida*, 517 U.S. 609, ——, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996) (type of relief sought is irrelevant as to whether claim is barred by the Eleventh Amendment).

■ In addition, suits against state officials for damages or retrospective relief are also barred, as they are considered suits against the state. *See Feldman v. Bahn*, 12 F.3d 730, 732 (7th Cir.1993), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 571, 130 L.Ed.2d 489 (1994); *Hutsell v. Sayre*, 5 F.3d 996, 999–1000 (6th Cir.1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *Chinn*, 963 F.Supp. at 224–225; *Chacko v. Texas A & M Univ.*, 960 F.Supp. 1180, 1198–99 (S.D.Tex.1997). Thus, Plaintiff's claims against the individual Defendants in their official capacities seeking monetary or retrospective damages are barred by the Eleventh Amendment. However, a suit against a state official sued in his or her official capacity is allowed if the plaintiff seeks injunctive, prospective relief to prevent a violation of federal law. *Chinn*, 963 F.Supp. at 224–25. Court orders directing a state official to reinstate a plaintiff are considered prospective relief and such claims are not barred by the Eleventh Amendment. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir.1996); *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir.), *cert denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Chinn*, 963 F.Supp. at 224–25. Thus, Plaintiff's claims against the individual Defendants in their official capacity seeking reinstatement to the MAPL program are not barred by the Eleventh Amendment.

■ Finally, state officials who are sued in their personal capacity are not protected by the Eleventh Amendment, regardless of the recovery sought. *Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619 (8th Cir. 1995); *Biggs*, 66 F.3d at 60; *Chinn*, 963 F.Supp. at 225. Plaintiff sufficiently specified that she was suing the individual Defendants in both their official and personal capacities. Pl.'s Sec. Am. Compl. ¶¶ 4 ("both their official and individual capacities"). Thus, Plaintiff's claims against the individual Defendants in their personal capacities are not barred by the Eleventh Amendment.

In sum, the Court finds that the following claims are barred by the Eleventh Amendment: 1) All of Plaintiff's § 1981 and § 1983 claims against the University of Maryland; 2) Plaintiff's § 1981 and § 1983 claims against the individual Defendants in their official capacity seeking a declaratory judgment that her constitutional rights were violated; 3) Plaintiff's request that the Court issue an order to purge records of her termination from the University files inasmuch as it is based on § 1981 and § 1983; and 4) Plaintiff's § 1981 and § 1983 claims against the individual Defendants in their official capacity seeking monetary damages. The Court concludes that the following claims are not barred by the Eleventh Amendment, and will consider the rest of Defendants' Motion for Summary Judgment regarding these claims: 1) All of Plaintiff's Title IX and Title VI claims; 2) Plaintiff's claims against the individual Defendants in their official capacity for reinstatement to the MAPL program; and 3) All of Plaintiff's claims against the individual Defendants in their personal capacity.

## III. *Gender Discrimination*

### A. *Title IX*

Plaintiff brings claims of gender discrimination under Title IX and § 1983. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance ..." 20 U.S.C. § 1681(a). Most courts have taken the Title VII employment discrimination proof scheme and applied it to Title IX gender discrimination cases. *See Preston v. Virginia ex rel. New River Comm. College.*, 31 F.3d 203, 207 (4th Cir.1994) ("We agree that title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX."); *Lipsett v. Univ. of P.R.*, 864 F.2d 881 (1st Cir.1988).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court created a burden-shifting proof scheme for Title VII employment discrimination cases. First, the Plaintiff must establish a *prima facie* case by proving "by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Establishment of a *prima facie* case serves to raise an inference of discrimination. *Id.* at 254, 101 S.Ct. at 1094 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)). Once a plaintiff has made a prima facie case, the defendant then has the burden to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. If the defendant does offer such proof, then the plaintiff's *prima facie* case is rebutted, the inference of discrimination drops out of the case, and the plaintiff then has the burden to prove that the defendant's nondiscriminatory explanation was mere pretext. *Id.* at 255–56, 101 S.Ct. at 1094–95.

Either direct or indirect evidence may be used to make out a *prima facie* case. *Ballinger*, 815 F.2d at 1006 (citing *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230 (4th Cir.1982)). Direct evidence can be "evidence that the employer announced, or admitted, or otherwise unmistakably indicated that age

was a determining factor." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir.1982) (applying Title VII analysis to age discrimination claim).

Because of the difficulty in obtaining direct evidence in a discrimination case, the Supreme Court established a model for making a *prima facie* case through indirect evidence. This model requires that the plaintiff prove: (1) that she belongs to a protected class; (2) that she applied and was qualified for a job for which applicants were sought; (3) that despite her qualifications she was rejected; and (4) that after the rejection the position remained open and applicants with similar qualifications as plaintiff's were sought. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The model is not inflexible, *Burdine*, 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6, and has been modified for contexts more similar to Plaintiff's case. *See, e.g., Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164–66 (4th Cir.1997); *Smith v. Univ. of N.C.*, 632 F.2d 316, 341, 344 (4th Cir.1980) (faculty promotion); *see also Roxas v. Presentation College*, 90 F.3d 310, 315 (8th Cir. 1996); *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987) (African–American female physician terminated from fellowship program "must show that she was terminated from a position for which she was qualified while others not in the protected class were treated more favorably"). Plaintiff does not have to use the *McDonnell Douglas* model, and instead can choose to rely on traditional methods of proving circumstances that create an inference of discrimination. *Cuthbertson v. Biggers Bros., Inc.*, 702 F.2d 454, 458 (4th Cir.1983). Plaintiff's sworn statements of discriminatory incidents, for which the employer does not give a non-discriminatory explanation, are sufficient to defeat a motion for summary judgment. *International Woodworkers v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir. 1981).

Upon review of the record, the Court finds that Plaintiff has failed to make a prima facie case. The record contains no direct evidence, such as an admission or indication by any of the defendants, that the reason for Plaintiff's termination from the MAPL pro-

gram was her gender. Plaintiff must therefore rely on indirect evidence for her *prima facie* case.

■ Plaintiff also has failed to make a *prima facie* through indirect evidence. Adapting the *McDonnell Douglas* test to this case, Plaintiff must prove that she belongs to a protected class, that she was qualified for the position, and that she was terminated despite her qualifications. The fourth element concerning the position remaining open to similarly qualified applicants does not apply to this case.

Plaintiff has satisfied the first element, that she was a member of a protected class. However, Plaintiff has not satisfied her burden of proving that she was qualified for the position. While this Court is not in a position to conclude that Plaintiff was *unqualified*, and does not so conclude, it can conclude that Plaintiff has not met her *burden of proof* on this element of her *prima facie* case. The faculty members of the MAPL program require a student to pass a minimum number of qualifying tests to demonstrated their qualifications for the program and it is undisputed that Plaintiff failed all of her qualifying tests.[3] Despite Plaintiff's possible successes in other areas of her academic career, the Court must give due weight to the program's requirements for qualification. In light of plaintiff's poor performance on the qualifying tests, the Court concludes that Plaintiff has not come forth with sufficient evidence to satisfy the element concerning her qualification for the position. Because this is a required element, *see Burdine*, 450 U.S. at 253,

101 S.Ct. at 1094 ("she applied for an available position for which she was *qualified*" (emphasis added)); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 ("he applied and was *qualified* for a job" (emphasis added)); *Gairola v. Virginia Dept. Gen. Serv.*, 753 F.2d 1281, 1286 (4th Cir.1985), the Court must conclude that she has failed to make her *prima facie* case.[4]

■ Even if Plaintiff did make a *prima facie* case, her poor performance on the qualifying tests provides a legitimate nondiscriminatory explanation for the defendants under the *McDonnell Douglas* model. Plaintiff admits that MAPL students were required to pass a minimum number of qualifying tests before their second year. Pl.'s Opp. to Defs.' Mot. for Summ. J. at 2–3. Plaintiff's claims of disparate treatment are insufficient to prove that the termination upon her failing the tests was pretextual, as is required by *McDonnell Douglas*.

Plaintiff's first claim of disparate treatment is that she was subjected to discrimination in Math 602, a class taught by Dr. Schafer in which Plaintiff was the only female.[5] Plaintiff claims that Dr. Schafer said to her that "I don't know whether I'm a racist or not. I may be a sexist, but I don't know if I'm a racist or not." Middlebrooks Dep. at 70. Plaintiff also claims that she heard that Dr. Schafer was a sexist and had made sexist remarks in the past. Middlebrooks Dep. at 37, 43–44. In addition, Plaintiff alleges that other incidents occurred where she was treated less fairly than male students.[6] Finally, Plaintiff lists a number of

---

3. On a majority of the tests, Plaintiff did not approach a passing score. Defs.' Mem. Supp. Summ. J. at 7; Ex. 4 at 3, 6–10.

4. In reaching this conclusion, the Court recognizes the deference courts give to academic evaluations. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 87–91, 98 S.Ct. 948, 953–56, 55 L.Ed.2d 124 (1978).

5. Plaintiff claims that she was the only student to receive a B instead of an A, Pl.'s Sec. Am. Compl. ¶ 35; Middlebrooks Dep. at 37, 62, that Dr. Schafer did not want her in the class, Middlebrooks Dep. at 40–43, that he created animosity toward Plaintiff among other students by changing the requirements of the class after her enrollment, Middlebrooks Dep. at 67–69, that he told

her that she was inferior to the other students, Middlebrooks Dep. at 65–66, that he accused her of receiving help on her assignments, Middlebrooks Dep. at 69–70, and that he questioned Plaintiff about simple math principles in an insulting manner, Middlebrooks Dep. at 70. While Dr. Schafer generally does not question the occurrence of the above disputes, he does allege that his actions were motivated entirely by concerns about Plaintiff's qualifications as a student. Schafer Dep. at 36–40, 45–51, 54–55, 67–69, 81.

6. Plaintiff claims that in grading a test for a business class, Dr. Golden did not give her credit for an answer because she did not show her work while a male student who did the same thing received credit for his answer. Middlebrooks Aff. ¶ 3. Plaintiff also claims that she

occasions where she claims to have been treated unfairly but does not present any evidence that similarly situated male students were treated differently.[7]

■ Viewing the evidence in a light most favorable to Plaintiff, and making all justifiable inferences in Plaintiff's favor, the record contains insufficient evidence that Plaintiff's termination after failing to pass the qualifying tests was pretextual. Plaintiff must link these incidents to the qualifying tests in order to show pretext. *See Roxas v. Presentation College*, 90 F.3d 310, 317 (8th Cir.1996) (professor challenging denial of sabbatical could not defeat summary judgment because he "offered no evidence linking these alleged statements to his sabbatical application or to the Board's decision to deny his application"). "Speculation and belief are insufficient to create a fact issue as to pretext.... Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against." *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1032 (S.D.Tex.1996) (citations omitted). Plaintiff's assorted claims of discrimination and academic unfairness, while unfortunate, simply do not support the conclusion that her termination under clear MAPL program requirements was mere pretext.

**B.  § 1983/Equal Protection**

■ Plaintiff also sues under § 1983, claiming gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment In order to establish a violation of the Equal Protection Clause, Plaintiff must prove discriminatory purpose or motive. *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir.1980). As with

Title IX, courts have used Title VII principles to assess § 1983 claims of gender discrimination. *See Gairola v. Virginia Dept. Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896 (1st Cir.1988). For the same reasons that Plaintiff has not made a *prima facie* case under Title VII principles, the Court also concludes that she has not made out an Equal Protection claim through § 1983. In light of her failure on all of the qualifying tests, she has not produced evidence showing that her gender was a substantial or motivating factor in her termination from the MAPL program.

**IV.  *Race Discrimination***

**A.  *Title VI and § 1981***

Plaintiff brings racial discrimination claims under both Title VI and § 1981. Title VI provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. § 1981 guarantees all persons "the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981.

As with Title IX, courts commonly use the Title VII proof scheme to evaluate claims under Title VI and § 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989); *Hankins v. Temple Univ.*, 829 F.2d 437 (3d Cir.1987); *Gairola v. Virginia Dept. Gen. Servs.*, 753 F.2d 1281 (4th Cir.1985); *Baldwin v. Univ. of Tex. Med. Branch at Galves-*

received a more difficult zoology test than a male student received, that her testing conditions were more difficult, and that she did not receive hints about the test's content that the male student received. Middlebrooks Dep. at 130–32, 137–42; Middlebrooks Aff. ¶¶ 11–13; Perlitz Dep.; and Stephan Dep. at 36.

**7.** Plaintiff claims that she was told the incorrect starting time for a test, Middlebrooks Dep. at 101–05, that on the same exam two of her answers were marked wrong because of her methods of proof even though she was not told specif-

ic methods were required, Middlebrooks Aff. ¶ 5, that her exam was not graded blindly as is normal procedure, Golden Dep. at 76–78, that she was forced to take one set of qualifying exams in three days instead of the customary one week period, Pl.'s Opp. to Defs.' Mot. for Summ. J. at 12, that her grade on one test was reported incorrectly, Middlebrooks Dep. at 115, that a mistake in a question on one test was inserted purposely to make her fail, Middlebrooks Dep. 120–21, and that two of her answers on one test were missing when Plaintiff wanted to review the test, Middlebrooks Dep. at 124–26.

*ton,* 945 F.Supp. 1022, 1031 (S.D.Tex.1996); *Love v. Duke Univ.,* 776 F.Supp. 1070, 1073 (M.D.N.C.1991), *aff'd,* 959 F.2d 231 (4th Cir. 1992).

Plaintiff's most significant evidence of racial discrimination involves a teaching assistant and Dr. Schafer. There is evidence that while Plaintiff was enrolled in a class for which a woman named Elena Black was a teaching assistant, Ms. Black unfairly disclosed private information about Plaintiff's' grades to other students, Middlebrooks Dep. at 29–36; Middlebrooks Aff. ¶ 21; Boyle Dep. 24–28, 59, and that at some time Ms. Black made a racial remark concerning the academic ability of African–American students. Prof. Boyle, a former ombudsman, testified in his deposition that he thought Ms. Black made a remark concerning low scores of African–American students and possibly commented negatively on the success of the department's affirmative action effort. *Id.* at 33–35, 59. Prof. Boyle concluded, after approximately a one week investigation, that the remark was insensitive but not racist despite Plaintiff's probable perception of racism. *Id.* at 35–38.

Regarding Dr. Schafer, Plaintiff first alleges that Dr. Schafer said to her that "blacks, in general, can't do math," Middlebrooks Dep. at 61, or "blacks cannot perform mathematics," Middlebrooks Aff. ¶ 7. Dr. Schafer strongly denies making any such remark. When asked during his deposition if he made the remark, Dr. Schafer responded "Could not. No, I did not, and I never could." Schafer Dep. at 47. Moreover, Defendants point out that Plaintiff apparently changed her testimony regarding this remark after consulting notes that she has been unable to produce. Defs.' Mem. Supp. Summ. J. at 9 n. 5; Middlebrooks Dep. at 161–63. Dr. Schafer does admit that he used the phrase "black magic" in the classroom despite the fact that he was aware that the phrase offends people and that Plaintiff may have asked him to stop using it. Schafer Dep. at 58–62.

Plaintiff's evidence of racial discrimination also includes a note reading "Cool European Dudes" displayed on the door of Dr. Stephan which Plaintiff found racially offensive. Ste-

phan Dep. at 48; Middlebrooks Aff. ¶ 15. There is also evidence that subsequent to Plaintiff's termination from the MAPL program, Dr. Stephan terminated Plaintiff's husband from a grant program, in part, because of Plaintiff's filing of this suit. Stephan Dep. at 29–31.

These four issues, Ms. Black, Dr. Schafer, the note on Dr. Stephan's door, and the termination of Plaintiff's husband, are the only matters Plaintiff cites from her three years in the MAPL program that could be seen as having racial overtones. The rest of Plaintiff's evidence of racial discrimination consists of numerous academic disputes previously cited by the Court. *See supra* notes 4 (treated differently from white male students), 5 (treated unfairly with no evidence of disparate treatment).

For the same reasons as discussed by the Court regarding Plaintiff's gender discrimination claims, *supra,* the Court finds that Plaintiff has not made a *prima facie* case of racial discrimination, either under the *McDonnell Douglas* model or a traditional showing of circumstances that raise an inference of discrimination. One of the elements of Plaintiff's *prima facie* case is proof that she was qualified for the position from which she was terminated. The qualifying tests are an important part of the MAPL program's evaluation of students, and this Court is unwilling to overrule this chosen method of evaluation. Because of Plaintiff's poor performance on the qualifying tests, she has not satisfied the "qualified" element of her *prima facie* case. Even outside of the *McDonnell Douglas* model, it would be unreasonable to infer, based on the record before the court, that the termination was based on anything other than her poor performance on the qualifying tests.

Even if the Court concluded that Plaintiff has made a *prima facie* case, Plaintiff has not brought forth sufficient proof to demonstrate that her termination was pretextual. The MAPL program clearly requires a student to pass two tests by the end of her third year to continue in the program. Plaintiff has brought forth no evidence that this policy was enforced unfairly or inconsis-

tently in her case. Drawing all inferences in favor of the Plaintiff, the Court recognizes that a jury could view the described incidents as evidence of racial animosity by some individuals, including two defendants. But regardless of how a jury might view this evidence, these are, at worst, isolated examples of possibly racially-motivated behavior by individual people. These incidents are tangential to the central issue of Plaintiff's termination from the program after failing the qualifying tests. Even if two or three people acted with racial prejudice toward Plaintiff during her three years in the MAPL program, these episodes do not undercut the heart of the issue, Defendants' nondiscriminatory explanation for Plaintiff's termination from the program. Plaintiff has failed to make the required showing of pretext because the incidents are not evidence that the Defendants used Plaintiff's failures on the qualifying tests as a pretext, or excuse, to terminate her from the program.

### B. § 1983/Equal Protection

■ As discussed *supra*, courts often use the Title VII proof scheme to evaluate Equal Protection claims brought under § 1983. For the reason discussed *supra*, the Court finds that Plaintiff has failed to make a *prima facie* case of race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and § 1983. Outside of the Title VII scheme, the Court's discussion *supra* demonstrates that Plaintiff has failed to make a *prima facie* case that Defendants were motivated by a racially discriminatory purpose, or that race was a substantial or motivating factor in her termination from the MAPL program. *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 (5th Cir.1980).

### V. *Plaintiff's Claim of Hostile and Abusive Environment*

■ In her opposition to Defendants' Motion for Summary Judgment, Plaintiff for the first time raises the argument that Defendants created a hostile and abusive environment that affected her performance in the program. Pl.'s Opp. to Defs.' Mot. for Summ. J. at 18–28. Plaintiff argues that reliance on her performance on the qualifying tests is inappropriate because the alleged hostile environment prevented her from succeeding on the tests. *Id.* at 19, 27. The Court agrees with Defendants that Plaintiff has raised the hostile environment claim too late in these proceedings. However, the Court will briefly address the new argument.

To make a hostile environment claim in the Title VII context Plaintiff must show that the conditions were severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The alleged conduct must alter the conditions of Plaintiff's working environment. *See Hartsell v. Duplex Prods. Incorp.*, 123 F.3d 766, 772–73 (4th Cir.1997) (quoting *Meritor Savs. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2495–06, 91 L.Ed.2d 49 (1986)). The Supreme Court has directed courts to look at factors such as the following: the frequency of the conduct, its severity, whether it was physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it interfered with the person's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

The conduct Plaintiff has alleged was not frequent enough, severe enough, or threatening enough to have created a hostile environment under the Supreme Court's guideline's in *Harris*. The alleged incidents occurred over a long period of time, were most often common academic disputes, and were not physically threatening. More importantly, Plaintiff's only evidence that the alleged conduct interfered with her performance on the qualifying tests is the statement in her affidavit that Defendants created an environment in which it was "impossible to learn." Middlebrooks Aff. ¶ 19. Because the incidents were neither severe nor pervasive, and because Plaintiff has provided no evidence that they had an impact on her performance on the qualifying tests, the Court concludes that Plaintiff's hostile environment claim does not help her opposition to Defendants' Motion for Summary Judgment.

## 834

### Conclusion

Using the proof scheme established in the Title VII context, Plaintiff has failed to make a *prima facie* case of race or gender discrimination because she has not demonstrated that she was qualified for the position from which she was terminated. Even if Plaintiff has made a *prima facie* case, Defendants have given a legitimate, nondiscriminatory explanation for Plaintiff's termination: she failed to pass two qualifying tests as is required by MAPL policy. While Plaintiff has presented evidence of a number of incidents that may have had racial or gender overtones, none of these incidents have been sufficiently connected to the qualifying tests to prove that the termination was pretextual. Similarly, outside of the Title VII proof scheme, Plaintiff's poor performance on the qualifying tests prevents the Court from finding circumstances suggesting a discriminatory termination by Defendants.

Because of the above findings, the Court concludes that Defendants are entitled to judgment as a matter of law and that Defendants' Motion for Summary Judgment must be granted. A separate order consistent with this opinion will follow.

### ORDER

In accordance with the Memorandum Opinion, it is this 23rd day of September, 1997 ORDERED:

1. That the Defendants' Motion for Summary Judgment BE, and the same hereby IS, GRANTED; and

2. That the Clerk of the Court CLOSE this case, and

3. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all counsel of record.